UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 25-cv-22892-EA

ZHIJIAN YANG,

Plaintiff,

v.

CITY NATIONAL BANK OF FLORIDA,
BCI FINANCIAL GROUP, INC.,
BANCO DE CREDITO E INVERSIONES, S.A.,
RENALDO ROBAINA,
JAMES CAMPANELLA,
RAFAEL BARRERA,
JOANNE MORRIS and
ARIEL CARRION,

Defendants.

**FOURTH AMENDED COMPLAINT**

Plaintiff ZHIJIAN YANG (the "Plaintiff") sues Defendants CITY NATIONAL BANK OF FLORIDA ( "CNB"), BCI FINANCIAL GROUP, INC. ("BCI"), BANCO DE CREDITO E INVERSIONES, S.A. ("Banco") (Defendants CNB, BCI and Banco collectively referred to herein as "Corporate Defendants"), RENALDO ROBAINA ("Robaina"), JAMES CAMPANELLA ("Companella"), RAFAEL BARRERA ("Barrera"), JOANNEMORRIS ("Morris") and ARIEL CARRION ("Carrion") (Robaina, Companella, Barrera and Morris collectively referred to herein as "Individual Defendants"), (Corporate Defendants and Individual Defendants collectively referred to herein as "Defendants") and alleges:



SCANNED

## NATURE OF ACTION

This action arises out of Plaintiff's employment relationship with the Defendants, during which Plaintiff was subjected to race and national origin discrimination and retaliation under 42 U.S.C. § 1981, as amended, 42 U.S.C.A. §§ 2000e *et seq.* ("Title VII"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et seq.* ("FCRA"). This is also an action to recover damages for violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"), Florida's Whistleblower's Act, Section 448.102, Florida Statutes, and Florida Common Law for fraud in the inducement, intentional infliction of emotional distress, and negligent infliction of emotional distress.

## JURISDICTION, VENUE AND PARTIES

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 2617, 42 U.S.C. § 1981, 42 U.S.C.A. § 2000e-5(f)(3), and Florida Civil Rights Act, § 760.10, Fla. Stat. *et seq.* ("FCRA") and Section 448.102, Florida Statutes.

2. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

3. Plaintiff is an individual residing in West Palm Beach, Florida, who was employed by the Defendants as Senior Data Architect and is within the jurisdiction of this Honorable Court and is sui juris.

4. The Defendant City National Bank (CNB) is a banking and financial institution with its principal place of business located at 100 SE 2nd Street, 16th Floor, Miami, FL 33131. At all times relevant, CNB was engaged in business in Miami-Dade County, Florida.

5. The Defendant Bci Financial Group, Inc. ("Bci Inc.") is the parent company of CNB with its principal place of business located at 100 S.E. 2nd Street, 19th Floor, Miami, Florida 33131. At all times relevant, Bci Inc. was engaged in business in Miami-Dade County, Florida.

6. Defendant Banco de Credito e Inversiones ("Bci") is a financial institution with its principal place of business located in Santiago, Chile and the owner of CNB and Bci Inc.

7. Defendant Renaldo Robaina ("Robaina") at all relevant times, was employed as the Manager of CNB and is sui juris.

8. Defendant James Campanella ("Campanella") at all relevant times, was employed as the Chief Operating Officer of CNB and is sui juris.

9. Defendant Rafael Barrera ("Barrera") at all relevant times, was employed as the Chief Human Resources Officer of CNB and is sui juris.

10. Defendant Joanne Morris ("Morris") at all relevant times, was employed as the Director of Human Resources of CNB and is sui juris.

11. Defendant, Ariel Carrion ("Carrion") at all relevant times, was employed as Chief Information Officer of CNB and is sui juris.

12. Defendants, CNB and Bci Inc., at all times material hereto, were and are engaged in interstate commerce.

13. At all times material to this Complaint, the Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

14. The Plaintiff worked for the Defendants for at least 12 months before the date any FMLA leave was to begin.

15. At all times material hereto, Plaintiff was an "aggrieved person" as defined by the FCRA, Fla. Stat. § 760.02(10).

16. The Plaintiff worked for the Defendants for at least 1,250 hours during the 12-month period before the date any FMLA leave was to begin.

17. The Plaintiff was entitled to FMLA leave because he had an FMLA-qualifying reason. Specifically, Plaintiff's father passed away and he had to travel to China with his elderly mother to fulfill his obligations as a son and prepare for and observe the extensive mourning rituals in accordance with Chinese law and his Chinese cultural practices and take care of his elderly mother who has serious health conditions.

18. At all times material, the Defendants were an "employer" as defined by 29 U.S.C. § 2611(4) and as defined by Fla. Stat. § 760.02.

19. The Defendants were both engaged in commerce or in an industry or activity affecting commerce and employed more than 50 employees for each working day during each of 20 or more calendar weeks in each calendar year relevant hereto.

20. The acts or omissions given rise to this Complaint occurred in whole or in part in Miami-Dade County, Florida.

21. Venue is proper under 28 U.S.C. § 1391(b) because the acts complained of occurred within this judicial district and because the Defendants have its principal place of business within the district, worked and/or reside in the judicial district and because the employment records of the Plaintiff are stored or have been administered in Miami-Dade County, Florida.

## CONDITIONS PRECEDENT

22. The Plaintiff has complied with all conditions precedent in filing this action, to wit:

a) The Plaintiff timely filed three charges of discrimination with the U.S. Equal Employment Opportunity Commission, Tampa Field Office, Charge Nos. 510-2024-09635, 510-2024-09638, and 510-2024-09640, and the Notices of Right to Sue for all three charges were issued simultaneously on April 2, 2025;

b) More than 180 days had passed since the filing of the Plaintiff's charge(s) of discrimination at the time the original complaint was filed; and

c) Plaintiff filed the original complaint on June 26, 2025, within 90 days of receipt of the Notices of Right to Sue dated April 2, 2025.

23. Any other applicable conditions precedent to bringing this action have occurred, been performed or been excused before the filing of this lawsuit.

## JOINT EMPLOYMENT

24. The Corporate Defendants operate as a unified and integrated enterprise. They share common ownership, centralized control over labor relations, overlapping management, and interrelated operations that render them joint employers under federal and Florida law. Banco Bci, a Chilean banking conglomerate, wholly owns Bci Financial Group, which in turn owns CNB. Through this parent-subsidiary chain, Banco and Bci exercise direct and functional control over CNB's employment decisions, financial operations, and corporate policies.

25. Each of the Corporate Defendants maintain active business operations in

Miami-Dade County and operates from interrelated office locations. Banco is located at 1450 Brickell Avenue, Suite 2800, Miami, Florida, while Bci and CNB share offices at 100 S.E. 2nd Street, 16th Floor, Miami, Florida. Their registered agents, legal departments, and executive management operate from these same downtown Miami buildings, evidencing centralized legal and administrative control. Bci and CNB share the same registered agent. The overlapping physical presence of these entities, along with their joint branding, demonstrates a single coordinated corporate identity operating under the "Bci" name and umbrella.

26. CNB publicly represents and prides itself on being a subsidiary of Bci (*https://www.citynational.com/post/city-national-bank-of-florida-launches-national-capital-markets-group-under-bcicapital-brand*), and working with Bci to expand its market by working under the Bci national brand (*https://www.monitordaily.com/city-national-bank-of-florida-launches-national-capital-markets-group-under-bcicapital-brand/*). This integrated branding under the "Bci" banner reflects unified services, shared resources, and collective financial interest. Employees and executives operate interchangeably across these entities, and the same human-resources and immigration personnel were involved in Plaintiff Yang's sponsorship, employment oversight, and termination, further proving centralized labor control and decision-making authority.

27. Defendants also share unified corporate functions, including human-resources oversight, payroll, benefits administration, and immigration sponsorship. For instance, Eugenio VON Chrismar Carvajal, the Chair of CNB"s Board of Directors, is also the Chief Executive Officer of Bci (*https://www.citynational.com/team/eugenio-von-chrismar-carvajal*) and Rafael Barrera Renault, the Executive Vice President, Chief Human Resources

Officer for CNB also served as the Director of Human Resources for Bci (*https://www.citynational.com/team/rafael-barrera-renault*). In Plaintiff's case, his Application for Permanent Employment Certification (PERM) filed on behalf of Plaintiff was processed and coordinated through HR executives operating under both CNB and Bci, consistent with Banco's global employment protocols. Compensation, payroll, and employee benefits were administered through parent-level systems controlled by Bci and Banco, establishing functional control over the conditions of employment.

28. Plaintiff Yang was jointly employed by all three Corporate Defendants and His H-1B visa sponsorship, payroll records, annual performance reviews, and personnel oversight were all administered within the Bci corporate structure. CNB issued pay through the parent's centralized payroll system at 100 S.E. 2nd Street, Miami, while Bci and Banco reviewed, approved, and ratified his employment through their shared HR and immigration departments. The same senior human-resources officials, acting on behalf of CNB and Bci, approved immigration filings, communicated with government agencies, and directed the conduct leading to Plaintiff's termination. The degree of integration and interrelation among these entities leaves no meaningful distinction between them for purposes of employer liability.

29. In all material respects, Banco, Bci, and CNB acted as a single business enterprise and joint employers of Plaintiff. They shared employees, resources, branding, and executive leadership, and functioned in the direct interest of one another. Each entity was an agent and instrumentality of the others and exercised substantial control over the terms, conditions, and continuation of Plaintiff's employment. Thus, all Corporate Defendants are properly alleged and sued as joint employers and as a single integrated enterprise within the meaning of Title VII, the FMLA, the ADA, and the Florida Civil Rights Act.

30. To the extent CNB acted unlawfully, it did so within the scope of authority conferred by, and for the benefit of, Banco, Bci and Bci Financial Group. Accordingly, each should be held jointly and severally liable as the others' principal, and agent.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

31. Plaintiff, a Chinese national. was employed by CNB on a H-1B visa as a Senior Data Architect from October 13, 2020, until his wrongful termination on September 25, 2023.

32. Plaintiff was hired by CNB due to his knowledge, experience and certifications in Azure cloud, on-premise data infrastructure, databases, data warehousing (DWH).

33. Plaintiff was the only Chinese employee of CNB, at his worksite. Defendants Robaina, Campanella, Barrera, Morris, Carrion and Plaintiff's similarly situated co-workers were Caucasian.

34. Throughout his employment, Plaintiff provided CNB management, including Campanella, Carrion, and Robaina, with ongoing and continuous notice that he required leave to care for his parents, both of whom suffered from serious health conditions as defined by the FMLA. Plaintiff expressly informed Defendants that his parents were elderly, in fragile health, and experienced repeated medical emergencies requiring his involvement in their care. Plaintiff notified Defendants that his father was hospitalized for extended periods, including hospital stays lasting up to three weeks in 2023, and that his mother had recurring hospitalizations lasting up to two months at a time, consistently from year 2023. These conditions required Plaintiff's participation in their medical care, coordination of treatment, and assistance with activities of daily living.

35. Despite receiving adequate and sufficient notice of Plaintiff's need for

intermittent and/or continuous FMLA leave, Defendants failed to advise him of his FMLA rights, failed to designate his absences as protected leave, and instead used his need for leave as a negative factor in subsequent adverse action.

36. Plaintiff explained his cultural obligations as the son under Chinese tradition and law to care for them during times of illness and death. Plaintiff Yang was raised in a culture where filial piety is not only a moral obligation but a legal one. Under Chinese law, including the Law on the Protection of the Rights and Interests of the Elderly, adult children are legally required to support and care for their aging parents, including providing for their financial, medical, and emotional needs. Mr. Yang's decision to request time off to travel abroad was consistent with both his deeply held cultural values and the legal obligations imposed on him by his country of origin. Defendants were aware of Mr. Yang's cultural and familial responsibilities when he made these requests for leave. Despite this, Defendants ultimately penalized Plaintiff for fulfilling a fundamental legal and moral obligation, further evidencing discriminatory and retaliatory intent.

37. In addition to these cultural and legal obligations, Plaintiff consistently informed Defendants that both of his parents suffered from serious health conditions that substantially limited one or more major life activities as defined under the ADA and FMLA. Plaintiff explained that, due to their fragile and declining conditions, his parents experienced significant limitations in the major life activities of walking, breathing, concentrating, remembering, managing medications, and performing activities of daily living, including bathing, eating, and independent mobility. These limitations required Plaintiff's continuous involvement in coordinating medical care, assisting with daily tasks, monitoring medications, and ensuring their safety. Defendants were fully aware that Plaintiff's need for intermittent

and extended leave stemmed directly from these substantial limitations and qualifying caregiving responsibilities.

38. Further evidencing his parents' fragile health, Plaintiff requested a separate workspace from the general population at work, so as not to negatively impact his parents' health by subjecting them to viruses, illnesses, and sicknesses because their health could not endure such exposure.

39. Plaintiff was a dedicated, high-performing employee.

40. In November 2021, Plaintiff received confirmation that Defendants agreed to move forward with his Green Card sponsorship, an immigration process that may only be initiated when an employer intends to permanently employ the sponsored individual.

41. In years 2021 and 2022, Plaintiff received "above expectations" reviews and was awarded performance bonuses. His work was widely praised by colleagues and CNB executives.

42. CNB officially filed an Application for Permanent Employment Certification (ETA Form 9089) on October 3, 2022, to sponsor Plaintiff for permanent employment and a green card.

43. The Plaintiff continued to perform his job duties and responsibilities exceptionally well.

44. In December 2022, Plaintiff's father's health began to rapidly decline. With the knowledge and approval of Defendant Renaldo Robaina, Plaintiff traveled to Canada to renew his U.S. visa stamp in preparation for international travel but was unable to receive a stamp because of the long wait period. CNB reimbursed the Plaintiff for the visa stamp application fee.

45. In early 2023, Plaintiff advised Robaina and Carrion that his father's health continued to deteriorate, and his mother's health was also failing. He reiterated his duty under Chinese culture and law to care for them.

46. Around this time, Plaintiff discovered alarming IT-related activities that posed potential security and compliance violations at CNB. He reported these concerns to Carrion and Robaina, in writing and verbally.

47. Plaintiff specifically reported to Chief Information Officer Ariel Carrion and immediate supervisor Renaldo Robaina that he had discovered serious security and compliance violations, including: (1) public-facing firewall access that left CNB's systems vulnerable; (2) unauthorized access to highly confidential financial and consumer data by individuals who were not employees of CNB, including international students who later dropped their affiliated class, posing severe data security risks; and (3) suspected corruption and waste involving CNB's outsourced IT projects that Plaintiff believed jeopardized the bank's systems and defrauded internal resources. Plaintiff explicitly warned that these issues violated CNB's own internal policies, the best industry practices, and likely implicated federal banking and cybersecurity regulations.

48. Plaintiff requested an in-person meeting with Carrion and upper management to address these concerns. For example, on July 18, 2023, the day before Defendants expressed their intent to terminate Plaintiff, the Plaintiff confronted Robaina about improperly approving access to CNB's databases in direct violation of bank policy, which required such access to be authorized only by designated executive level employees. The Plaintiff documented this confrontation in a contemporaneous email, yet no corrective action was taken, and he was separated from employment the following day, suggesting his eventual termination was in

retaliation for protected whistleblowing activity. Plaintiff told Carrion and Robaina that he had documented these incidents on his work computer and was prepared to provide evidence or further steps such as improvements if needed.

49. To no avail, Plaintiff repeatedly requested a face-to-face meeting to discuss the varying risks.

50. Despite Plaintiff's repeated alerts, neither Carrion nor Robaina followed up on Plaintiff's reports.

51. Concerned about the security breaches and the Corporate Defendants' potential exposure, Plaintiff continued to elevate his concerns regarding these cybersecurity and compliance issues to Carrion and Robaina, but no corrective action was taken.

52. Plaintiff also continued to inform Robaina of his parents' declining health hospitalizations, and his need to take time off to care for them. On June 11, 2023, Plaintiff requested paid time off (PTO) leave to accompany his ailing mother to China to grieve his father's impending death.

53. When Plaintiff's father passed away in June 2023, he immediately informed Robaina. He emphasized the importance of honoring his father through culturally significant mourning rituals and the emotional and logistical support to his mother whose health was declining. Plaintiff also contacted CNB's legal team and human resources office to inquire about the proper procedures for taking time off and safely returning to work from China.

54. Thereafter Plaintiff traveled again to Canada and given the special reason, his father's death, he qualified for an urgent visa stamp and was able to travel to China.

55. Plaintiff also informed Joanne Morris and Ariel Carrion that he was overwhelmed with grief and needed time to properly grieve, handle family matters and care for

his sick mother who continued to need consistent medical care and treatment, including hospitalizations for three (3) or more days.

56. Plaintiff took bereavement leave between June 22, 2023 to June 30, 2023.

57. Plaintiff continued updating Robaina about his mother's worsening health and reiterated his need for time off to accompany her to China, especially after his father's passing.

58. Upon returning to work, Plaintiff followed up with Carrion and Robaina regarding the suspicious IT activities and asked what steps were being taken to address them. He offered to assist with the investigation or further improvements.

59. Again, Plaintiff received no response from Carrion or Robaina.

60. Despite the emotional toll and lack of support from management, Plaintiff continued performing his job duties in a satisfactory and professional manner.

61. Plaintiff's mother's health required that he continue to work in a separate workspace.

62. As his mother's health worsened, Plaintiff once again requested time off to accompany her to China, where she had access to trusted medical care and family support.

63. PTO was Plaintiff's only viable option to care for his mother due to his visa and employment circumstances.

64. In July 2023, with the knowledge and approval of Robaina, Plaintiff traveled again to Canada to renew his visa stamp. On July 11, 2023, the visa stamp was obtained, and Plaintiff informed CNB that he was ready to travel with his mother to China.

65. On July 18, 2023, Robaina formally approved Plaintiff for PTO and instructed Plaintiff to process the request through CNB's online portal. Immediately upon Robaina's approval, Plaintiff followed Robaina's detailed instructions on how to formally process his

PTO online and received an automated email confirming the approval that same day. Plaintiff was still working hard at that time then immediately forwarded the email to Robaina and thanked him again for the trip approval.

66. Also on July 18, 2023, Plaintiff discovered continued violations of CNB's internal cybersecurity protocols and promptly reported them to his direct supervisor, Renaldo Robaina, both in person and via email. Specifically, Plaintiff objected to Robaina's improper approval of login access to CNB's Azure databases, a process that, pursuant to CNB's internal policy, required authorization exclusively from the Chief Information Officer (CIO) or Chief Information Security Officer (CISO). Plaintiff expressly requested that the unauthorized access be revoked and that the proper protocol be followed going forward. His email documentation reflected this request and was directed to Robaina.

67. Despite Plaintiff's efforts to address these serious security breaches through appropriate internal channels, no corrective action was taken. Instead, Plaintiff was terminated, reinforcing the inference that his protected disclosure was a motivating factor in his discharge. On July 19, 2023, the day after Plaintiff's leave was approved, Robaina, Morris and Carrion communicated that the Defendants intended to terminate Plaintiff's employment, citing "BCI cancelled the position" despite his strong performance and green card sponsorship based on his permanent employment.

68. The Defendants' actions and stated intention to terminate Plaintiff caused the Plaintiff significant emotional and psychological distress. Upon learning of Defendants' plans, Plaintiff experienced severe depression, extreme stress, and mental anguish directly attributable to Defendants' discrimination, retaliation and unlawful interference with and exercise of his FMLA rights. As a result of this emotional deterioration, Plaintiff required

inpatient medical treatment and was hospitalized for approximately one week in August 2023.

69. Then on September 25, 2023, Defendants sent Plaintiff a termination agreement formally terminating Plaintiff's employment.

70. Plaintiff did not work, nor was he paid his salary from the time of the July 19, 2023 meeting until the date of his formal wrongful termination, September 25, 2023.

71. After Plaintiff's wrongful termination, his depression, stress, anxiety and mental anguish worsened, causing Plaintiff to seek psychological treatment.

72. The timing of Plaintiff's separation from employment and termination, shortly after reporting serious IT violations and requesting culturally significant leave, supports a finding of unlawful retaliation.

73. Interestingly, CNB confiscated Plaintiff's work computer, work devices, work cell phone and other personal items, including a memory card that contained the documentation of unauthorized access and other IT violations, as well as irreplaceable personal photos and videos of his late father.

74. Plaintiff advised that he had documented proof of the IT violations on his computer, the Corporate Defendants confiscated. Plaintiff further advised that, in a haste, his manager confiscated a memory card that contained sentimental photos and videos of his late father, and requested the return of the memory card.

75. The Corporate Defendants never returned Plaintiff's memory card.

76. The Corporate Defendants never addressed Plaintiff's reports of security breaches and instead retaliated against him for raising these concerns and for asserting his cultural rights to family leave.

77. The Corporate Defendants and their managers acted with malice and reckless disregard for Plaintiff's emotional well-being when they separated him from employment one day after approving his leave, knowing of his grief and obligations to his elderly sick mother.

78. The Defendants' wrongful termination caused Plaintiff to suffer significant financial strain and additional emotional distress.

79. Defendants' conduct was motivated in part by Plaintiff's race and national origin, in violation of federal and state anti-discrimination laws.

80. Plaintiff suffered significant emotional pain, suffering, and financial loss as a result of the discriminatory and retaliatory conduct.

81. At no point prior to his termination was Plaintiff offered FMLA leave or informed of his rights under the Family and Medical Leave Act.

82. Plaintiff is pro se now but tries hard to find new counsel and has incurred and will continue to incur, legal costs. Seeks reasonable attorney's fees/costs as provided by law. -->82A

**COUNT I: INTERFERENCE**
**(FAILURE TO PROVIDE INFORMATION) – FMLA**

83. The Plaintiff repeats and re-alleges paragraphs 1 - 82 as if fully stated herein.

84. At all times material, in December 2022 and the beginning of 2023, Plaintiff continued to advise the Defendants of his father's declining health condition and his elderly mother's significant health issues and on June 11, 2023, Plaintiff gave proper notice when he formally requested time off to care for his seriously ill parents.

85. The Defendants were aware of Plaintiff's qualifying reason and Plaintiff provided enough information for the Defendants to know that his potential leave may be covered by FMLA. The Defendants had knowledge of such when Plaintiff traveled to Canada

167



82A. On October 3, 2022, the bank filed a PERM application (ETA Form 9089) with the U.S. Department of Labor. The bank stated that no qualified U.S. workers were available for my position. I was the top-performing incumbent (see Top Performance Reviews each year with additional Recognition Bonus, Top certificates, Top Reputations and skills, the Only one with proven Azure cloud Data experience and did many data migrations successfully from On-Prem to Azure cloud. The bank didn't post the job opening in a public area as required by law. I reported this. Months later, they told me that BCI cancelled my position Only. However, I later discovered the bank hired at least another person to cover my duties. The bank also misclassified me as exempt(mirrors the Bradley King, et al. v. City National Bank of Florida) under the H-1B LCA while forced me to work 80 hours per week to lower than prevailing salary required by H1b law. The bank never posted the H-1B job opening in a public area as required by law.

to renew a U.S. visa stamp to facilitate his travel to China in December 2022.

86. At all times material hereto, the Plaintiff regularly communicated with the Defendants of his father's declining health condition and his elderly mother's serious medical condition and gave proper notice to the Defendants and informed them of his qualifying reason.

87. At the time Defendants approved Plaintiff's request for paid time off (PTO) and instructed him to process the leave through CNB's internal online portal, Defendants knew or should have known that Plaintiff's leave was being requested to grieve the recent death of his father and to care for his ailing mother, circumstances that clearly qualified as protected leave under the Family and Medical Leave Act (FMLA).

88. Despite Defendants' awareness of the qualifying circumstances surrounding the leave request, Defendants failed to provide Plaintiff with the required FMLA notices and instead approved the leave as ordinary PTO. This failure to properly categorize and protect Plaintiff's leave rights under the FMLA, and their removal of Plaintiff from the workplace and communication of Defendants' intent to terminate Plaintiff's employment the very next day, constitutes both interference with and retaliation for Plaintiff's exercise of rights protected by federal law.

89. Clearly, despite its knowledge, the Defendants failed to notify the Plaintiff of his eligibility status and rights under the FMLA and failed to notify the Plaintiff whether his leave was or could be designated as FMLA leave.

90. Instead of informing the Plaintiff of his rights, the Defendants terminated the Plaintiff.

91. When the Defendants failed to notify the Plaintiff of his eligibility status and

rights under the FMLA and failed to notify the Plaintiff whether his leave was or could be designated as FMLA leave, the Defendants interfered with the Plaintiff's rights to take leave under the FMLA and denied him the benefits to which he was entitled.

92. Defendant's conduct caused Plaintiff to suffer severe depression, extreme stress, and mental anguish, resulting in his emotional deterioration and requiring inpatient medical treatment and hospitalization for approximately one week in August 2023.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendants for its violations of the FMLA;

b) Award the Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c) Award the Plaintiff liquidated damages based on the Defendants' conduct;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award the Plaintiff reasonable costs and attorneys' fees;

f) Award the Plaintiff any further relief pursuant to the FMLA; and,

g) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT II: INTERFERENCE (TERMINATION) – FMLA**

93. The Plaintiff repeats and re-alleges paragraphs 1 - 82 as if fully stated herein.

94. At all times material to this Complaint, the Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

95. The Plaintiff worked for the Defendants for at least 12 months before the date any FMLA leave was to begin.

Page 19 of 47

96. The Plaintiff worked for the Defendants for at least 1,250 hours during the 12-month period before the date any FMLA leave was to begin.

97. The Plaintiff was entitled to FMLA leave because he had an FMLA-qualifying reason. Specifically, Plaintiff's father passed away and he had to travel to China with his elderly mother to fulfill his obligations as the son and prepare for and observe the extensive mourning rituals in accordance with his Chinese cultural practices and take care of his elderly mother who has serious health conditions, which prevented the Plaintiff from performing the functions of his job.

98. At all times material, the Defendants were an "employer" as defined by 29 U.S.C. § 2611(4).

99. At all times material, the Plaintiff gave extensive and proper notice to the Defendants of his qualifying reasons. In fact, the Plaintiff provided enough information to the Defendants for them to know that his potential leave may be covered by FMLA.

100. The Defendants were aware of the Plaintiff's qualifying reason.

101. At all times material hereto, the Plaintiff communicated to the Defendants of his elderly parents' severe and deteriorating medical conditions.

102. Despite its knowledge of the Plaintiff's elderly parents' serious medical health condition, the Defendants failed to notify the Plaintiff of his eligibility status and rights under the FMLA and failed to notify the Plaintiff whether his leave was or could be designated as FMLA leave.

103. Instead of informing the Plaintiff of his rights, the Defendants terminated the Plaintiff.

104. When the Defendants terminated the Plaintiff's employment, the Defendants

interfered with the Plaintiff's rights to take leave under the FMLA and denied him the benefits to which he was entitled.

105. Defendant's conduct caused Plaintiff to suffer severe depression, extreme stress, and mental anguish, resulting in his emotional deterioration and requiring inpatient medical treatment and hospitalization for approximately one week in August 2023.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendants for its violations of the FMLA;

b) Award the Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c) Award the Plaintiff liquidated damages based on Defendants' conduct;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award the Plaintiff reasonable costs and attorneys' fees;

f) Award the Plaintiff any further relief pursuant to the FMLA; and,

g) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT III: RETALIATION (FMLA)**

106. The Plaintiff repeats and re-alleges paragraphs 1 - 82 as if fully stated herein.

107. At all times material to this Complaint, the Plaintiff was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2)(A).

108. The Plaintiff worked for the Defendants for at least 12 months before the date any FMLA leave was to begin.

109. The Plaintiff worked for the Defendants for at least 1,250 hours during the 12-

month period before the date any FMLA leave was to begin.

110. The Plaintiff was entitled to FMLA leave because he had an FMLA-qualifying reason. Specifically, Plaintiff's father passed away and he had to travel to China with his elderly mother to fulfill his obligations as the son and prepare for and observe the extensive mourning rituals in accordance with his Chinese cultural practices and take care of his elderly mother who has serious health conditions, which prevented the Plaintiff from performing the functions of his job.

111. At all times material, the Defendants were an "employer" as defined by 29 U.S.C. § 2611(4).

112. At all times material, the Plaintiff gave proper notice to the Defendants when he provided the status of his elderly parents' health as it declined and hospitalizations, and reiterated his obligations as the son to his parents as part of his Chinese cultural obligations to the Defendants informing the Defendants of his qualifying reason.

113. The Plaintiff provided enough information for the Defendants to know that his potential leave may be covered by FMLA.

114. The Defendants were aware of the Plaintiff's qualifying reason.

115. At all times material hereto, the Plaintiff communicated with the Defendants of his elderly parents' declining and serious medical health condition.

116. Despite its knowledge of the Plaintiff's parents' declining and serious medical health condition, the Defendants failed to notify the Plaintiff of his eligibility status and rights under FMLA and failed to notify the Plaintiff whether his leave was or could be designated as FMLA leave.

117. Instead of informing the Plaintiff of his rights, the Defendants terminated the Plaintiff.

118. The Defendants immediately separated Plaintiff from employment and then terminated the Plaintiff following his request for personal time off to take care of his sick, elderly parent.

119. The Defendants have intentionally engaged in unlawful employment practices in violation of FMLA, by retaliating against the Plaintiff upon his request for personal time off to take care of his sick, elderly parent.

120. The Plaintiff's request for time off to travel to China with his elderly mother to mourn the passing of his father and fulfill his obligations as the son to prepare for and observe the extensive mourning rituals in accordance with his Chinese cultural practices and take care of his elderly mother who has serious health conditions was a direct and proximate cause of his termination from his employment with the Defendants, although he was entitled to it pursuant to the FMLA.

121. The effect of the practice complained of above has been to deprive the Plaintiff of equal employment opportunities and, in fact, his employment, because of such complaint.

122. As a direct and proximate result of the intentional violations by the Defendants of the Plaintiff's rights under the FMLA, by retaliating against him by terminating his employment for requesting time off to take care of his sick, elderly parents, the Plaintiff has been damaged in that the Plaintiff lost, inter alia, his H-1B via, his wages, other compensation including bonuses, and other benefits such as health insurance.

123. Defendant's conduct caused Plaintiff to suffer severe depression, extreme stress, and mental anguish, resulting in his emotional deterioration and requiring inpatient

medical treatment and hospitalization for approximately one week in August 2023.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendants for its violations of the FMLA;

b) Award the Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity;

c) Award the Plaintiff liquidated damages based on the Defendants' conduct;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award the Plaintiff reasonable costs and attorneys' fees;

f) Award the Plaintiff any further relief pursuant to the FMLA; and,

g) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT IV: RACE DISCRIMINATION (DISPARATE TREATMENT) – 42 U.S.C.A. § 1981**

124. The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1- 82 of this Complaint.

125. The Plaintiff is a member of a protected class of Asian citizens.

126. At all times relevant, the Plaintiff was in a contractual relationship with the CNB within the meaning of 42 U.S.C.A. § 1981, as amended.

127. During the course of the Plaintiff's employment with CNB, the Defendants have violated the Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasians or non- citizens of Asian descent, in violation of 42 U.S.C.A. § 1981(b), as amended.

128. During the course of the Plaintiff's employment with CNB, the Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian or non-Asian employees of Chinese descent of the Defendants.

129. The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 25 to 70 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-Asians, in violation of 42 U.S.C.A. § 1981, as amended.

130. The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraph 47 denied the Plaintiff the right to make and enforce contracts as enjoyed by Caucasian or non-Asians, in violation of 42 U.S.C.A. § 1981, as amended.

131. Through their actions and treatment of the Plaintiff, the Defendants intended to discriminate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

132. During the course of the Plaintiff's employment with CNB, the Plaintiff has been subjected to a discriminatory, hostile and offensive work environment because of his race, as more fully described in paragraphs 25 to 70 of this Complaint.

133. The Defendants, at all times, had knowledge of the discriminatory acts and conduct of CNB managers and of all other discriminatory actions described in paragraphs 25 – 70 above.

134. Despite Defendants' knowledge of the ongoing discrimination, it failed to take remedial action.

135. The Defendants knowingly and willfully violated the law. The Defendants

acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

136. As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

137. The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendants for their violations of 42 U.S.C.A. § 1981, as amended;

b) Award the Plaintiff actual damages suffered;

c) Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award the Plaintiff punitive damages;

f) Enjoin the Defendants, their officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g) Award the Plaintiff reasonable costs and attorneys' fees; and

h) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT V: RACE DISCRIMINATION (RETALIATION) – 42 U.S.C.A. § 1981**

138. The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1- 82 of this Complaint.

139. The Plaintiff is a member of a protected class of Asian citizens.

140. At all times relevant, the Plaintiff was in a contractual relationship with CNB within the meaning of 42 U.S.C.A. § 1981, as amended.

141. During the course of the Plaintiff's employment with CNB, the Defendants have violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment contract as is enjoyed by Caucasian or non-Asians, in violation of 42 U.S.C.A. § 1981(b), as amended.

142. During the course of the Plaintiff's employment with CNB, the Plaintiff has not enjoyed the same benefits, privileges, terms and conditions of employment, as have Caucasian or non-Asian employees of the Defendants.

143. The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraphs 25 to 70 of this Complaint, denied the Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by Caucasian or non-Asians, in violation of 42 U.S.C.A. § 1981, as amended.

144. The Defendants' treatment, practices and policies directed toward the Plaintiff, as more fully described in paragraph 47, denied the Plaintiff the right to make and enforce contracts as enjoyed by Caucasian or non-Asian citizens, in violation of 42 U.S.C.A. § 1981, as amended.

145. Through their actions and treatment of the Plaintiff, the Defendants intended to discriminate against the Plaintiff on the basis of the Plaintiff's race and ancestry.

146. Despite the Defendants' knowledge of the ongoing discrimination, it failed to take remedial action.

147. Plaintiff complained about race discrimination.

148. In response, the Defendants terminated Plaintiff's employment.

149. The Defendants knowingly and willfully violated the law. The Defendants acted with malice and with reckless indifference to the Plaintiff's rights and emotional and physical well-being.

150. As a direct and proximate result of the foregoing, the Plaintiff has suffered embarrassment, humiliation, emotional distress, and other forms of damage.

151. The Plaintiff has suffered damages of an on-going and continuous nature.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment in the Plaintiff's favor and against the Defendants for their violations of 42 U.S.C.A. § 1981, as amended;

b) Award the Plaintiff actual damages suffered;

c) Award the Plaintiff compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress the Plaintiff has suffered;

d) Award the Plaintiff prejudgment interest on his damages award;

e) Award Plaintiff punitive damages;

f) Enjoin the Defendants, its officers, agents, employees and anyone acting in concert with them, from discriminating, harassing and retaliating against the Plaintiff and any employee;

g) Award the Plaintiff reasonable costs and attorneys' fees; and

h) Grant the Plaintiff such other and further relief as this Court deems equitable and just.

**COUNT VI: RACE AND NATIONAL ORIGIN DISCRIMINATION**
**(DISPARATE TREATMENT) – TITLE VII**
***Against Corporate Defendants***

152. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1- 82 above as if set out in full herein.

153. Plaintiff is a Chinese individual of Asian descent and, as such, is a member of a protected class under Title VII and 42 U.S.C. § 1981.

154. The Plaintiff's race and national origin were motivating factors that caused the Corporate Defendants to discriminate against the Plaintiff.

155. Specifically, from the outset of his employment with CNB, Plaintiff, the only Chinese employee in his department, was treated less favorably than his non-Asian counterparts. Despite Plaintiff's exceptional performance and high-level contributions, evidenced by above- expectations reviews and performance bonuses in 2021 and 2022, Corporate Defendants failed to take any action to address the discriminatory treatment he faced. Instead, after Plaintiff exercised his rights by requesting culturally significant bereavement leave and reporting serious IT violations, he was abruptly terminated under pretextual grounds. The discriminatory conduct by Corporate Defendants and their agents was pervasive, intentional, and carried out with malice or reckless indifference to Plaintiff's federally protected rights, as detailed throughout the factual allegations of this Complaint, created a hostile work environment and constitute unlawful discrimination in violation of Title VII.

156. The Plaintiff sustained emotional suffering and injury attributable to the discrimination.

157. The Corporate Defendants acted with malice and with reckless indifference to the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a) Issue an order enjoining the Corporate Defendants to cease and desist from the conduct described in Count VI of this Complaint and from harassing Plaintiff in any manner whatsoever.

b) Issue an order requiring the Corporate Defendants to take steps to protect Plaintiff and other similarly situated employees from the type of conduct described in Count VI of this Complaint, and from all other forms of harassment in the future.

c) Issue an order requiring the Corporate Defendants to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of race and national origin and taking suitable remedial action.

d) Order reinstatement of the Plaintiff to the position he would occupy and with all the benefits he would have if he had not suffered adverse employment action attributable to race and national origin discrimination, or award Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e) Award the Plaintiff backpay, including overtime pay, pension benefits, and other employment benefits which would have accrued if Plaintiff's employment had not been terminated.

f) Award the Plaintiff compensatory damages for her/his emotional suffering.

g) Award the Plaintiff punitive damages.

h) Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i) Award the Plaintiff costs, interest, and such other relief as this Court may deem

proper.

**COUNT VII: RACE AND NATIONAL ORIGIN DISCRIMINATION**
**(RETALIATION) – TITLE VII**
***Against Corporate Defendants***

158. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 - 82 above as if set out in full herein.

159. The Plaintiff complained about discrimination. As a result, he was terminated.

160. From the outset of his employment with CNB, Plaintiff, the only Chinese employee in his department, was treated less favorably than his non-Asian counterparts. Despite his exceptional performance, reflected in above-expectations evaluations and performance bonuses in 2021 and 2022, Corporate Defendants took no meaningful action to address the discriminatory conduct and disparate treatment he faced in the workplace. Instead, when Plaintiff engaged in protected activity by reporting serious IT-related misconduct and asserting his right to culturally significant bereavement leave following his father's death, Corporate Defendants retaliated against him. Within days of his protected disclosures and his formal leave request, approved by his supervisor, Plaintiff was abruptly terminated under pretextual grounds. The close temporal proximity between Plaintiff's complaints and his termination, coupled with Corporate Defendants' failure to investigate his reports or offer FMLA protection, demonstrates a clear retaliatory motive. Corporate Defendants' actions were willful and taken in reckless disregard of Plaintiff's rights under Title VII's anti-retaliation provisions.

161. The Plaintiff sustained emotional suffering and injury attributable to the harassment.

162. The Corporate Defendants acted with malice and with reckless indifference to

the Plaintiff's civil rights and emotional and physical well-being.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a) Issue an order enjoining the Corporate Defendants to cease and desist from the conduct described in Count VII of this Complaint and from harassing the Plaintiff in any manner whatsoever.

b) Issue an order requiring the Corporate Defendants to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count VII of this Complaint, and from all other forms of harassment in the future.

c) Issue an order requiring the Corporate Defendants to adopt and disseminate a policy protecting employees from harassment in the workplace and establishing reasonable and adequate procedures for investigating complaints of race and national origin and taking suitable remedial action.

d) Order reinstatement of the Plaintiff in the position he would occupy and with all the benefits he would have if he had not suffered adverse employment action attributable to race and national origin discrimination or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e) Award the Plaintiff backpay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

f) Award the Plaintiff compensatory damages for her emotional suffering.

g) Award the Plaintiff punitive damages.

h) Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

i) Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

**COUNT VIII: RACE AND NATIONAL ORIGIN DISCRIMINATION**
**(DISPARATE TREATMENT) – FCRA**
***Against Corporate Defendants***

163. The Plaintiff re-states and re-alleges paragraphs 1 through 82 as if set forth in full herein.

164. At all times material hereto, the Corporate Defendants failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 et seq., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

165. The Plaintiff is a Chinese individual of Asian descent and is therefore a member of a protected class.

166. Plaintiff, a Chinese national and the only Chinese employee at his CNB worksite, was subjected to disparate treatment during his employment in violation of the Florida Civil Rights Act. Despite being a high-performing Senior Data Architect who received performance bonuses and consistently exceeded expectations, Plaintiff was denied support and accommodations for culturally significant bereavement and caregiving responsibilities tied to his Chinese heritage. He repeatedly informed CNB managers, including Carrion and Robaina, about his parents' deteriorating health, hospitalizations and his cultural obligations, yet was met with indifference. While similarly situated Caucasian employees were not subjected to the same scrutiny or denial of leave, Plaintiff's legitimate PTO request,

approved one day earlier, was followed by abrupt termination without warning or justification. The timing and circumstances of his termination, including CNB's confiscation of his personal and professional materials, demonstrate that Plaintiff was treated less favorably than non-Asian counterparts because of his race and national origin., as set forth in the general allegations section of this Complaint.

167. The discriminatory conduct was unwelcome, offensive to the Plaintiff, and would be offensive to a reasonable person.

168. Plaintiff was subjected to this conduct because of his race and national origin. Similarly situated employees outside Plaintiff's protected class, non-Asian, non-Chinese employees, were not subjected to the same adverse treatment.

169. Plaintiff was fully qualified for his position and performed at an exceptional level, but was nevertheless terminated under pretextual grounds shortly after he requested culturally significant bereavement leave and reported potential violations of data security.

170. The Corporate Defendants' actions were motivated, at least in part, by Plaintiff's race and national origin, in violation of the FCRA.

171. As a direct and proximate result of the Corporate Defendants' intentional conduct, Plaintiff has suffered and will continue to suffer economic damages and emotional distress.

172. Any alleged nondiscriminatory reason for Plaintiff's treatment is pretextual and was designed to conceal unlawful discrimination.

173. Corporate Defendants acted with malice and reckless disregard for Plaintiff's rights pursuant to Fla. Stat. § 760.10.

174. The aforementioned actions of the Corporate Defendants were done

wantonly, willfully, maliciously and with reckless disregard for the consequences of such actions.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Declare that the acts complained of herein are in violation of the Florida Civil Rights Act.

b) Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation.

c) Grant a permanent injunction enjoining the Corporate Defendants, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d) Order the Corporate Defendants to make the Plaintiff whole, by compensating him for lost wages, benefits, including front pay, back pay with prejudgment interest.

e) Award a monetary judgment representing prejudgment interest.

f) Award any other compensation allowed by law including punitive damages and attorneys' fees (448.104).

g) Award the Plaintiff costs of this action, including reasonable attorneys' fees.

h) Grant such other and further relief as the Court deems just and proper.

**COUNT IX: RACE AND NATIONAL ORIGIN DISCRIMINATION**
**(RETALIATION) –FCRA**
***Against Corporate Defendants***

175. The Plaintiff re-states and re-alleges paragraphs 1 through 82 as if set forth in full herein.

176. Plaintiff has complied with all conditions precedent to bringing this action.

177. At all times material, the Corporate Defendants failed to comply with the

Florida Civil Rights Act, Fla. Stat. § 760.10 et seq., which prohibits retaliation against employees for engaging in protected activity, including complaints of discrimination.

178. Plaintiff, a Chinese individual of Asian descent, engaged in protected activity when he repeatedly complained to Corporate Defendants Carrion and Robaina about discriminatory treatment and raised concerns about unlawful data security violations.

179. Plaintiff engaged in protected activity under the Florida Civil Rights Act by repeatedly reporting serious internal data security violations, including unauthorized access to confidential systems and potential corruption involving third-party contractors, to CNB supervisors Carrion and Robaina. He also asserted his right to culturally significant bereavement leave and requested time off to care for his ailing mother following his father's death, explaining the importance of these obligations in his Chinese culture.

180. Despite his exceptional performance record and CNB's ongoing sponsorship of his permanent residency, immediately following his protected complaints and after he requested bereavement and personal leave for culturally significant family obligations, Plaintiff was abruptly separated Plaintiff from employment under false and pretextual justifications, on July 19, 2023, just one day after his PTO request was formally approved by management.

181. The discriminatory and retaliatory conduct described in the general allegations section of this Complaint was offensive, intentional, and would be offensive to a reasonable person.

182. Plaintiff was qualified for his position and had a record of high performance, as evidenced by annual bonuses and positive reviews, yet he was terminated in retaliation for asserting his rights.

183. The proximity between his complaints and his termination, along with CNB's failure to investigate his concerns or offer him FMLA protection, strongly supports an inference that Plaintiff was retaliated against for engaging in protected activity, in violation of the FCRA.

184. As a direct and proximate result of Corporate Defendants' unlawful retaliation, Plaintiff has suffered and will continue to suffer lost wages, benefits, and emotional distress.

185. The Corporate Defendants' actions were malicious and carried out in reckless disregard of Plaintiff's rights pursuant to Fla. Stat. § 760.10.

186. The aforementioned actions of the Corporate Defendants were done wantonly, willfully, maliciously and with reckless disregard for the consequences of such actions.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Declare that the acts complained of herein are in violation of the Florida Civil Rights Act.

b) Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation.

c) Grant a permanent injunction enjoining the Corporate Defendants, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race and national origin.

d) Order the Corporate Defendants to make the Plaintiff whole, by compensating him/her for lost wages, benefits, including front pay, back pay with prejudgment interest.

e) Award a monetary judgment representing prejudgment interest.

f) Award any other compensation allowed by law including punitive damages and

attorney's fees (448.104).

g) Award the Plaintiff costs of this action, including reasonable attorneys' fees.

h) Grant such other and further relief, as the Court deems just and proper.

**COUNT X: RETALIATION – FPWA 448.102(3)**
***Against Corporate Defendants***

187. The Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 - 82 as if fully set forth herein.

188. Florida Statutes § 448.102(3) prohibits retaliation against an employee who objects to, or refuses to participate in, any activity, policy, or practice of the employer which violates a law, rule, or regulation.

189. Plaintiff, a Chinese individual of Asian descent, explicitly refused to participate in practices he reasonably believed to be in violation of data security laws, including granting unauthorized database access and overlooking internal data integrity policies. Plaintiff objected to the involvement of non-bank, temporary students in highly sensitive IT tasks, and warned management, including Carrion and Robaina, of the legal risks.

190. Rather than addressing Plaintiff's good-faith objections, Corporate Defendants terminated him the day after approving his paid leave, which he had requested to care for his ailing mother following the death of his father.

191. Plaintiff engaged in protected activity under Fla. Stat. § 448.102(3) when he explicitly objected to and refused to participate in CNB's unlawful and unsafe IT practices, including granting unauthorized access to confidential data, permitting non-employees to handle sensitive systems, and ignoring clear cybersecurity threats that violated data protection laws such as Florida Statutes § 501.171. Plaintiff raised these objections directly with

supervisors Carrion and Robaina, warning that such conduct exposed CNB to serious legal and regulatory risk. Rather than address his concerns, CNB terminated Plaintiff's employment after approving his PTO request to care for his ailing mother, despite his ongoing green card sponsorship and high-level performance. The timing and circumstances of Plaintiff's termination establish that Corporate Defendants retaliated against him for objecting to illegal conduct, in violation of § 448.102(3).

192. Corporate Defendants' termination of Plaintiff for objecting to and refusing to take part in illegal data practices constitutes a violation of Florida's Private Whistleblower Act, § 448.102(3).

193. As a direct and proximate result, Plaintiff suffered financial loss, reputational damage, and emotional harm.

194. Breach of security of confidential personal information is a violation of section 501.171 of the Florida Statutes.

195. The Corporate Defendants fired the Plaintiff because he refused to participate in the security violation.

196. The firing of the Plaintiff is a wrongful act in violation of the Florida Whistle-blower's Act, Section 448.102, Florida Statutes.

197. As a direct result of the Corporate Defendants' unlawful actions, the Plaintiff has been damaged.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Reinstate the Plaintiff to the same position held before the Corporate Defendant's retaliatory action against the Plaintiff, or to an equivalent position;

b) Reinstate the Plaintiff's full fringe benefits and seniority rights;

c) Award Plaintiff compensation for lost wages, benefits, mental damages, and other remuneration;

d) Order payment by the Corporate Defendants of the Plaintiff's reasonable costs and attorney's fees of this action pursuant to Section 448.104, Florida Statutes;

e) Issue an order prohibiting the Corporate Defendants from discharging individuals who refuse to engage in or object to practices which violate Florida law; and

f) Order such further relief as the Court deems just and proper.

**COUNT XI: FRAUD IN THE INDUCEMENT –**
***Against Defendants City National Bank of Florida, Renaldo Robaina, Joanne Morris and Ariel Carrion***

198. The Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 – 43 and 67 – 82 as if fully set forth herein.

199. Plaintiff brings this cause of action against Individual Defendants CNB, Robaina, Morris, and Carrion for fraud in the inducement. Each of the Individual Defendants, acting within the scope of their authority at CNB, knowingly made false statements of material fact with the intent to induce Plaintiff to accept CNB's offer of employment.

200. Specifically, in or around October 2020, Individual Defendants represented to Plaintiff that:

i. CNB would not only transfer Plaintiff's H-1B visa, but it would also pursue permanent labor certification and sponsor him for long-term employment; and

ii. Plaintiff would receive all benefits normally afforded to CNB employees, including full eligibility for PTO, health coverage, and annual performance-based bonuses.

201. Furthermore, and based on information and belief, CNB, through its Human Resources Department and senior management, including but not limited to Joanne Morris

and others acting under the supervision of Bci, submitted and certified a PERM application with materially false statements.

202. At the time these representations were made, Individual Defendants knew or should have known they were false or made with reckless disregard for the truth, and had no intention of honoring all of the promised terms, particularly with respect to Plaintiff's immigration sponsorship and full access to benefits.

203. The PERM filing and associated communications were designed to create a false sense of job security and long-term sponsorship, thereby inducing Plaintiff to remain employed, reject alternative employment opportunities, and continue contributing his expertise to CNB's operations. Clearly, the statements were made in order to induce Plaintiff to remain employed under false pretenses and to secure the continued use of his specialized labor without the intent to complete the sponsorship process or maintain his employment.

204. Plaintiff reasonably relied on these misrepresentations when he accepted CNB's offer of employment and declined other viable job opportunities. He thereafter relocated and began employment with CNB as its Senior Data Architect.

205. Plaintiff's claim for fraud in the inducement arises from false representations made by CNB, Robaina, Morris, and Carrion at the time of hire and throughout his employment. In October 2020, these Individual Defendants knowingly misrepresented to Plaintiff that CNB would sponsor his H-1B visa, pursue his permanent labor certification (decided in 2021), and provide him with full employment benefits, including salary, bonuses, paid leave, and health coverage, benefits afforded to similarly situated employees. Relying on these assurances, Plaintiff accepted the job, relocated, and declined other professional opportunities. However, Plaintiff later discovered that Individual Defendants never intended

to fully honor these promises, particularly with respect to continued immigration sponsorship and access to earned benefits. After Plaintiff requested culturally significant bereavement leave and raised internal security/corruption concerns, Individual Defendants abruptly terminated his employment, revoked his visa sponsorship, and withheld unpaid wages and performance bonuses. Individual Defendants' misrepresentations, made with intent to induce reliance, caused Plaintiff significant financial loss and emotional harm.

206. Defendants' fraudulent conduct was intentional and malicious, and were made to benefit the Defendants financially and operationally by retaining Plaintiff's labor and specialized expertise through deception.

207. As a direct and proximate result of Individual Defendants' fraudulent conduct, Plaintiff suffered substantial monetary losses, including unpaid wages, unpaid performance-based bonuses, lost future immigration sponsorship, and emotional and financial harm associated with his sudden and unlawful termination.

208. As a result of the Corporate Defendants, Robaina, Morris and Carrion's actions and false representations, Plaintiff suffered monetary damages in the form of unpaid salary, unpaid performance-bonuses and other benefits Plaintiff could have earned if he had pursued other employment opportunities.

209. Plaintiff reserves the right to amend his pleadings to assert a claim for punitive damages due to Individual Defendants' intentional, malicious, and deceitful conduct alleged herein.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a) Enter judgment against Individual Defendants and in favor of Plaintiff for damages;

b) Award Plaintiff compensation for lost wages, benefits, mental damages, and other

remuneration;

c) Award Plaintiff pre-judgment and post-judgment interest;

d) Award attorneys' fees and costs incurred in bringing this action; and

e) Order such further relief as the Court deems just and proper.

**COUNT XII – NEGLIGENT MISREPRESENTATION**
***Against Corporate Defendants***

210. Plaintiff re-alleges and incorporates by reference paragraphs 1 – 43 and 67 – 82 as though fully set forth herein.

211. At all relevant times, the Corporate Defendants owed Plaintiff a duty of reasonable care and candor in providing accurate information concerning his employment status, immigration sponsorship, and continued eligibility for lawful work authorization. Defendants were in a position of superior knowledge and control regarding the accuracy of immigration filings and internal decisions affecting Plaintiff's legal ability to live and work in the United States.

212. During the course of Plaintiff's employment, Defendants made a series of material misrepresentations, both orally and through written filings , concerning the progress, validity, and intent of Plaintiff's immigration sponsorship. Among these, in October 2022, Defendants certified a PERM application with material false statements. These statements were false or, at minimum, made without reasonable care for their truth or completeness.

213. At the time these representations were made, Defendants either knew or should have known that they did not intend to maintain Plaintiff's employment through the completion of his sponsorship or to finalize his permanent labor certification. Defendants failed to exercise due diligence in ensuring that statements made in their immigration filings,

internal communications, and representations to Plaintiff were accurate. Their negligent misstatements were material and foreseeable, as they directly impacted Plaintiff's immigration standing and his reliance on CNB for continued employment.

214. Plaintiff justifiably relied on these representations to his detriment. In reliance upon Defendants' assurances, Plaintiff remained employed with CNB, continued maintaining his visa compliance at personal expense, and declined other opportunities that could have preserved his legal status and career. Defendants' subsequent termination of Plaintiff during the active PERM sponsorship process demonstrated that their prior representations were false, misleading, and negligently made.

215. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff suffered significant damages, including:

- Loss of lawful work authorization and immigration sponsorship;
- Lost wages, benefits, and future earning potential;
- Loss of career advancement and professional reputation; and
- Emotional distress, anxiety, and financial hardship arising from his abrupt loss of lawful status and employment.

216. Defendants' conduct demonstrated a reckless disregard for the truth and for the foreseeable harm caused to Plaintiff by their negligent communications and omissions.

217. This claim is pled in the alternative to Count XII (Fraudulent Inducement). To the extent the trier of fact determines that Defendants did not act with actual intent to defraud but nevertheless made materially false or misleading statements without reasonable care, Plaintiff asserts that Defendants are liable for negligent misrepresentation under Florida common law.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Enter judgment against all Corporate Defendants for negligent misrepresentation;

b. Award compensatory damages for economic and non-economic losses;

c. Award pre-judgment and post-judgment interest;

d. Award reasonable attorneys' fees and costs; and

e. Grant such other and further relief as the Court deems just and proper.

**COUNT XIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
***Against Corporate Defendants***

218. The Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 – 82 as if fully set forth herein.

219. Corporate Defendants owed a duty to provide a safe and non-discriminatory work environment and to exercise reasonable care in the supervision and oversight of their managerial staff.

220. Corporate Defendants negligently breached this duty by failing to intervene or correct the hostile and abusive treatment Plaintiff suffered at the hands of Robaina, Morris, and Carrion, including their actions in denying Plaintiff protected leave, humiliating him, and ultimately terminating him without just cause while he was grieving the death of his father.

221. Corporate Defendants knew or should have known that such conduct would likely cause emotional harm, particularly given Plaintiff's cultural background and the sensitive nature of his leave request.

222. As a direct and proximate result of Corporate Defendants' negligent inaction and disregard for Plaintiff's mental health, Plaintiff suffered severe emotional distress and related physical symptoms.

223. Corporate Defendants' negligent failure to protect Plaintiff from discrimination was done in bad faith.

224. As a result of Corporate Defendants' negligence, Plaintiff experienced severe and extreme emotional distress that manifested in physical symptoms, including insomnia, headaches, or gastrointestinal distress.

225. Plaintiff requests that the Court award compensatory damages in an amount to be determined according to proof by Plaintiff against all Defendants in their individual capacities.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a. Award Plaintiff compensatory damages for embarrassment, anxiety, humiliation and emotional distress Plaintiff has and continues to suffer;

b. Award Plaintiff monetary judgment representing prejudgment interest;

c. Award Plaintiff punitive damages;

d. Award Plaintiff costs, expenses, reasonable attorneys' fees and any other

e. compensation allowed by law; and

f. Grant Plaintiff such other and further relief as this court deems equitable and just.

**COUNT XIV – CONVERSION**
***Against Corporate Defendants***

226. The Plaintiff re-alleges and incorporates the allegations set forth above in paragraphs 1 – 30 and 73 – 82 as if fully set forth herein.

227. Plaintiff was the rightful owner of personal items, including a memory card that was in his possession and contained irreplaceable personal property, including photos and videos of his late father, as well as documentation of unauthorized IT access and violations.

228. Plaintiff maintained lawful ownership and an immediate right to possess the memory card and other personal property contained on or within his work devices.

229. Corporate Defendants, without Plaintiff's consent and without lawful justification, directed its employees, including but not limited to managers Carrion and Robain, to wrongfully take possession of the memory card belonging to Plaintiff when they confiscated his work computer, devices, and work phone.

230. Plaintiff expressly informed Corporate Defendants that the memory card contained very important and personal information, and he requested its return.

231. Despite Plaintiff's demands, the Corporate Defendants directed its employees to refuse to return the memory card and its contents, thereby exercising wrongful dominion and control over Plaintiff's personal property inconsistent with Plaintiff's ownership rights.

232. As a direct and proximate result of the Corporate Defendants' unlawful conversion, Plaintiff has suffered damages, including emotional distress and the permanent loss of irreplaceable personal property.

**WHEREFORE**, Plaintiff, Zhijian Yang, respectfully requests that this Court enter judgment in his favor and against the Corporate Defendants on this Count for Conversion, and award the following relief:

a) Compensatory damages in an amount to be determined at trial for the value of the converted property, including but not limited to the irreplaceable personal photos and videos of Plaintiff's late father;

b) Consequential and incidental damages resulting from the Corporate Defendants' wrongful retention of Plaintiff's personal property;

c) Punitive damages for Corporate Defendants' willful, malicious, and oppressive

conduct in unlawfully exercising dominion over Plaintiff's property;

d) Pre- and post-judgment interest as permitted by law;

e) The costs of this action; and

f) Such other and further relief as this Court deems just and proper.

COUNT XV VIOLATION OF FLSA(UNPAID OVERTIME)Against CorporateDefendants

233.Plaintiff re-alleges and incorporates paragraphs 1–30 and 73–82.

234.During my employment, I worked about 80 hours per week.

235.Defendants misclassified me as "exempt" to avoid paying overtime.

236.Defendants' failure to pay overtime was willful and showed reckless disregard for the law. They willfully misclassified me as exempt. They knew I worked overtime because I reported hours via email and the bank's systems, and they refused to pay. On July 18, 2023, my manager approved my China leave again—but asked to adjust a day to treat it as new approval. At3:43pm he forwarded my request (including overtime info) to the CIO approving my China leave to take my sicker mom after dad's death. HR system sent formal approval hours later. 16 hours later, they fired me—only 20 hours before my flight. Their video should show: my manager told my TOP Performance again and would refer me, instead they used many people to cut my access/email, seize my property, a 6'7" guard walked me off my room, floor, and building. I lost my H1B and PERM Green Card filing. Same day, post-employment threats—threatening legal action and warning "YOU SHOULD GOVERN YOURSELF ACCORDINGLY." The CIO produced a 2024 memo to EEOC—uses my English alias 1 time, no legal name, no signature, no timestamp, no delivery path, no manager's involvement, I never saw it. A 79-year-old bank's fire procedure for a Top Performance VP? This memo confirms they knew my overtime but refused to pay.

237.Defendants seized my laptop and phone containing my time records to hide this debt.

238.I am entitled to back pay for all overtime hours, plus liquidated (double) damages under 29 U.S.C. § 216(b).

**JURY TRIAL DEMAND**

The Plaintiff demands trial by jury of all issues so triable as of right.

**Dated: June 26, 2026.**

Respectfully submitted,

By:s/ ZHIJIAN YANG
ZHIJIAN YANG,Pro Se Plaintiff
C/O ZHIJIAN YANG
6631 PIERPONT DR
LAKE WORTH,FL,33467
PHONE786.827.3707;
Email:ez2yang@gmail.com